Philip Fraser and Wife, *vs.* Charles Willey.

PHILIP FRASER AND WIFE *vs.* CHARLES WILLEY.

. Where this Court is equally divided in opinion, judgment must be entered affirming the judgment of the Court below.

Where there is such division, the justices are not required to file their opinions in writing before judgment is pronounced.

The statute providing that the justices shall file their opinions "in all cases decided in said (this) Court before judgment pronounced" is only *directory.*

Motion to vacate the judgment heretofore entered in this cause in this Court. The grounds of the motion are stated in the opinion.

*Fraser*, for the Motion.

HAWKINS, Justice :

This case was argued upon its merits at the last term of this Court and submitted to it for its decision, and the Court being equally divided judgment of affirmance was entered and the plaintiff in error now seeks to vacate that judgment and reinstate the case upon the following grounds to wit: *First*, That the Court being equally divided in opinion, no judgment could be entered affirming the judgment of the Court below. *Second*, that the justices of the Supreme Court did not file their opinions in writing in this case before judgment was pronounced.

These are important questions touching the practice of this Court, neither of which have before occurred in this State. Upon a very full examination of them however, they seem to present very little difficulty.

The general rule is that he who makes a motion to reverse a judgment, and takes nothing by it, it is to be considered as denied, otherwise the consequence might be that the record would be here forever, and to give effect to that *denial*, a judgment of affirmance ought to be given. Bridge *vs.* Johnson, 5 Wendell 374. In the case of Iveson *vs.* Moore, 1 Salkeld 17, the concluding part of the case is this : The Court being thus divided and *there being a former rule to stay judgment*, no judgment could be entered, but *et per curiam* if the Court had been divided on the *first* motion the *plaintiff might have entered judgment*, but now this rule must stand or be discharged, and discharged it cannot be, because the Court are equally divided.

Philip Fraser and Wife, *vs.* Charles Willey.

In 1 Ld. Raymond 495, in a note the reporter says : " In this case upon one of the former motions in arrest of judgment a rule *was made that judgment should be arrested,* and now the Court being divided the plaintiff could not have the rule discharged nor have judgment. *But if on the former motion the Court had been divided judgment would have been entered for the plaintiff.* These cases are therefore authority in favor of the correctness of the judgment in this case. In the Exchequer Chamber it is the practice upon a division to affirm the judgment. Deighton *vs.* Greenville.

And so is the practice in the House of Lords, 1 Shower 36.— Cruise on Fines 222, Irish Edition 118. 2 Tidds' Pr. 1236. A similar decision was made in the Court of Exchequer Chamber in Ireland, in the case of Warburton *vs.* Loveland and Ivie in 1828. 1 Hudson and Brooks, Reps. 725. The same practice has obtained in the Supreme Court of the United States. See the United States *vs.* Worrell, 2 Dall. 388. 11 Wheaton Reps. 59.

The judgment of the Court below must be presumed to be right until the Court of dernier resort has decided otherwise. Bridge *vs.* Johnson, 5 Wendell 372. 3 Tidds Pr. 1178. The same rule obtains in Maryland. 5 Harr. and Johnson, 284.

It is a principle of the common law that when a motion is made in a Court of Justice and the Judges are equally divided on the question, the mover takes nothing by his motion. Foot *vs.* Tracey, 1 John. Reps. 54. Iveson *vs.* Moore, 1 Salk. 17. Chapman *vs.* Lamphere, 3 Mod. 156. 1 Shower 46, in note.

As to the second point, that the Court was bound in compliance with the statute to file written opinions even in case of a divided Court, we have come to the conclusion that it is not requisite or necessary and that it was not the intention of the Legislature that we should do so. The statute is in these words, " The Justices of the Supreme Court shall file their opinions in all cases decided in said Court, before judgment is pronounced, which shall be entered of record in the case."

The objects which the Legislature had in view in declaring that the decisions of this Court should be in writing, and afterwards printed in the shape of reports appear to be these, that the citizens of the State should have the benefit of the adjudications of their highest legal tribunal, upon all questions or cases brought before it. The decisions of these questions involving as they inevitably must the rights of persons and property, including frequently the inter-

Philip Fraser and Wife, *vs.* Charles Willey.

pretation of statutes, becoming in fact rules of action to nearly or quite the same extent as the statutes themselves, the importance of their promulgation must be at once apparent and readily appreciated. It seems clear, that the opinions of the justices *as a Court* are to be written and if there should not be a majority of the Court agreeing on one side of the question, there can be no decision. There must be something decided before the statute applies, and if the Court is divided can there be in the nature of things a decision ? The Lexicographers tell us that the term "decided," implies " decision, something that is unequivocal, that puts an end to doubt." Suppose the Court stand opposed two to two, are there any doubts removed, is not the case left in the same situation in which it came up, leaving the questions of law involved in it as open questions and subject to future adjudication. Can the opinion of the Court be cited as authority in any future controversy ? Certainly not, because there is a perfect mathematical balance with no preponderance on either side.

It may be said that there is a *sub modo* decision, inasmuch as there is a judgment of the Court, but at most it would appear a decision by operation of law, and not by the Court, a *majority* being necessary to produce that result. Nor can we invoke the decision of the judge at *nisi prius* to be thrown in one scale or the other. The cause comes up to be tried *de novo*, with the facts already ascertained, the counsel better and more maturely prepared than in the Court below, and is to be decided by a tribunal possessing all the advantages of an Appellate Court. The intention of the Legislature seems to have been to obtain the reasons which have guided and actuated the Court in coming to a decision, rather than those which might have operated to produce division and disagreement. Even if we are wrong in this view of the matter, the not having filed written opinions in this case, would not affect the validity of the judgment, for the statute is only directory. Statutes directing the mode of proceeding by public officers, are advisory and not essential to the validity of the proceedings themselves unless it be so expressed. 8 Vermont, R. 280. Corless *vs.* Corless, ib. 390. People *vs.* Allen, 6 Wendell 480. Pond *vs.* Negus, 3 Mass. 230.

Of course we have regarded the question as a purely legal one, having naught to do with inquiries based upon any supposed expediency. With these views, we are of opinion that the motion must be denied. *Per Curiam.*

BALTZELL, Justice, dissenting :

The decision of the Court in this case is that there is no obliga-.tion to deliver opinions where there is an affirmance of the judgment .through an equal division of the justices. In this I do not concur, ·conceiving that the law is imperative, and extends to and embraces both in its letter and spirit all cases disposed of. Its language is .the justices "shall deliver opinions in all cases decided."

The Court, however, says although there was a judgment there was no decision, and therefore the statute is inapplicable. I find no such ·distinction in any elementary work of the law, in any book of re-ports, nor in any Statute, nor is a citation of any such given by the Court. They say Lexicographers " tell us that the term decided implies decision, something that is unequivocal, that puts an end to ·doubt." Admitting this, does it prove that judgment is differ-ent from decision, or are we to infer that judgment implies indecis-ion, something that is equivocal, or that creates a doubt. A more ·extended reference to the same authority would have found the word decision defined to be ' determination, as of a question or doubt, *final judgment* or opinion in a case which has been under deliberation, discussion.'

Nor is this view of the Court as we apprehend sustained by the text books. 1 Black. Com. 69.

Nor by the language of this Court itself on repeated occasions— Miller, &c. *vs.* Hoc, " this case must be governed by the *decision* of the Court in the preceding case as in the one just *decided,* the *judgment* is therefore reversed." 1 Flor., 197.

In Beatty *vs.* Ross, the Chief Justice *decided* the case and his *decision* being sustained the judgment is confirmed, &c., Ibid. 210.

In Archer *vs.* Duval's administrator by the common law *judgment* followed the *decision* on a demurrer as matter of course, &c. Ibid 203, 204, 207.

Nor by that of other Courts.

The Supreme Court of the U. S. uses the two words as follows : " A judgment concludes the subject in which it is rendered and pronounces the law of the case, it puts an end to all enquiries by *deciding* it." 3 Peters, 204.

" The decision of a Court of Record is conclusive, and whether

*its decision* be correct or not its *judgment,* until reversed, is binding on every other Court." 1 Peters, 340.

Whilst the words are used indiscriminately, in correct legal acceptation the judgment may be regarded as the formal expression of the decision spread out on the record by the Clerk.

Nor is the distinction maintained in the various statutes referring to the final action of our Courts.

Thus in the second section of the law of the first State Legislatures organizing the Supreme Court of the State we find these words together: "The acts of the Governor and Council now in force, and providing for regulating appeals from the judgments, or decrees, *or decisions* of the Superior Courts of the Territory to the Court of Appeals or writs of error for the review of *decisions* of said Superior Courts shall as far as applicable be in full force, and be deemed to apply to said Supreme Court."

In the 14th section of the same law "That all cases now pending in said Court of Appeals shall be transferred to said Supreme Court, and tried and *decided* therein and thereby. Laws of 1845, p. 13.

It is under this section the Court took jurisdiction of the case under consideration, and from it derived their power over it. If the case is not *decided* this part of their duty would seem yet to remain.

The provision for the delivery of opinions is in this same statute. The sixth section of the law regulating the mode of suing out writs of error, and prosecuting appeals has this provision "That the said Court of Appeals may order the record of the judgment with their *decision* and determination thereon in writing duly certified to be remitted to the said Superior Court, and the said *decision* and determination shall be carried into execution by the officers of the said Court or the said Court of Appeals may award execution to carry into effect its *decisions* and determination." Duval, 109.

Now we can scarcely imagine authority more direct and express—the decision is to be remitted—the decision carried into effect. If the Court has sent their mandate without a decision the law would seem not to have been complied with.

Again the opinion asserts that "although there was a judgment it was by operation of law *and not by the Court.*" Here there is no reference to authority, and the question occurs if not made by the Court, who or what other power is there that can rightfully, under

Philip Fraser and Wife, *vs.* Charles Willey.

the Constitution and laws of the State make it? All judgments are by operation of law, but can the law operate to make a judgment in the absence of, or without a Court?

" The record however, does not in my judgment, sustain the allegation that the judgment was without a Court.

PHILIP FRAZER and WIFE, adm'rs, &c., *vs.* CHARLES WILLEY. ⎰ January Term, 1847.

Present Hon. THOS. DOUGLAS, Chief Justice, Hon. THOS. BALTZELL, Hon. GEO. S. HAWKINS, Hon. GEO. W. MACRAE, Justices.

This day came the parties by their attorneys, and the transcript of the record of the judgment aforesaid being seen and inspected, and said parties being fully heard by counsel, and the court being equally divided in opinion, it is considered by the court that the, said judgment be affirmed," &c.

The question is asked as not admitting of any doubt, " Is not the case left in the same situation in which it came up, leaving the questions of law involved in it as open questions, and subject to future adjudications?" Can it be the design to say, that the case is open in the Circuit Court, and to be tried there again? This would seem to be the fair inference, for the Supreme Court had refused to take farther action of it, by declaring the judgment of the former term valid. We have, however, thought this scarcely possible. If yet subject to future adjudication, it must be by the Supreme Court; and if so, the question arises, why was the motion of the plaintiff to reinstate his case overruled?

Again, it is said that the opinion of the Court in such a case is not authority. With due deference, this question is more appropriate for the tribunal before which the decision may hereafter be quoted. Courts do not usually attach to their opinions when delivered the estimate to be placed upon them, nor pledge themselves in advance to recognize or reject any case as authority. But why is this case not authority? As the judgment of the Circuit Court, expressing the law of the case, until reversed it is authority— when that judgment is affirmed by the Supreme Court is there a diminution of its authority? The Judge of the Circuit Court declared the law of the case, the Supreme Court affirm the judgment, thereby giving the sanction of that tribunal to the law as declared by the Court below.

A reversal obviously would have destroyed the authority of the

case; but that an affirmance has this effect, is to confound and utterly annihilate the meaning and sense of terms. This would be to place the Court in the contradictory position of maintaining by their *judgment* the right of one of the parties under the law which by the qualification attached to their opinion they maintain that he is not entitled to—in other words affirm the case as to the parties, but reverse it as authority for other cases and this upon the ground that the "Court stands opposed two to two—or is divided and in such case it is said there is a perfect mathematical balance with no preponderance on either side." With due deference we cannot admit the propriety of this language, we do not admit that a Court can be divided. By law a majority of the judges is sufficient to transact business and the agreement of more than half of these will be sufficient to decide a case although this majority may be less than half the number of the judges, thus in a judicial body of twelve, seven present would be a quorum and four concurring as to a case would render the judgment though in fact constituting only one third of the judges. In a body consisting of five judges a quorum consists of three and two of these concurring render the judgment of the Court. In Legislative assemblies this is also the case. In the instances of the judicial bodies above stated the four in the one case and the two in the other constitute the Court, in the Legislature the majority of the quorum constitute the Legislature and this by operation of law. A concurrence of a sufficient number of judges to do business, to give judgments, to decide cases then constitutes the Court and in case of concurrence with them although there may be disagreement or division amongst the judges there is no division of the Court. This is the law of its organization.

A similar law prevails in the structure and organization of Appellate Courts, and Courts of Error of the last resort, where there is an equal division of the judges. In such cases by the settled rule the judges in favor of affirmance constitute the Court, there is then by operation of law an affirmance of the judgment, a declaration by the Court that the judgment of the Court below is right and must be carried into execution. Such is the case in the House of Lords in England, Court of Errors of New York—of Maryland. In this Court also as announced in the present case and repeated again in the case of Williams and Moseley the same law prevails. In cases depending in other Courts it is a principle "where the judges are divided the mover takes nothing by his motion, *there is no judgment,*" the invari-

able practice of the Court of Kings Bench and of the Common Pleas being *not to give judgment* in case of a division of opinion of the judges." 1 Strange, 383.

With due deference, by not attending to this distinction the mistake has been committed of saying when the Court is divided " the principles of law are not settled, the question is not decided," &c,—" the case only is settled, not the law in this Court." With great propriety this language may be applied to cases of division in the Kings Bench and Common Pleas where there is *no judgment.* Can it however apply where there is decision and a judgment rendered ?

These positions as to the law not being settled, the question not decided, but only the particular case, &c., are so opposed to the principles and mode of action by which Courts profess to govern as to be irreconcilable with reason and propriety. According to Blackstone " judgment is the conclusion that naturally and regularly follows from the premises of law and fact, &c., which judgment or conclusion depends not therefore on the arbitrary caprice of the judge but on the settled and invariable principles of justice." 3 Black. 396.

" It is the sentence of the law pronounced by the Court upon the matter contained in the record." 3 Black. 395. " A Court when it constructs a judgment forms it of certain materials which are law, these materials the Court does not make and so far the judgment is not creative of law. These materials consist of the divers laws within the realm, of maxims, principles, rules, intendment and reason of the common law, report books, records and other authorities of law." Ram on Jud. 2.

If these materials are rejected in the decision of a case what substitute is to take their place ? Can they give a judgment without their use, indeed rejecting them by their own admission ? Is not this the giving a judgment which is not law and therefore reversing the sense and meaning of the term ? Is it not substituting the mere dixit of the judge in place of a decision based upon the settled and invariable principles of justice ? Can there be a law or rule of action applicable to two parties and their rights which is not applicable to all parties and all rights of the same kind ?

I will not be understood as contending that a decision of this kind is of the highest or best authority. My position is that it is authority lessened in weight by the fact that it was rendered by a

divided Court. Ram on Judgments in speaking of "the circum-stances which may lessen the value of authority," specifies cases "where the Court was equally divided or were not unanimous in opinion," p. 183.

A higher authority is to be found in a case decided by the Supreme Court of Vermont and taken from Washburn's Digest. "It must be a very clear case and one unsusceptible of doubt which would lead the Supreme Court to disturb a question which had been settled in previous years even though that decision were given by a Court divided in opinion." State *vs.* Bosworth, 13 Verm. 402. I insist then that there has been a decision of this case by this Court and of the questions and principles of law involved in it—that it is absolute and valid as if concurred in by all the Judges—that it is the law of the case and of all other cases similarly situated until like all other authority it can be assailed by shewing that it was not law.

If the case was decided the statute is applicable unless although within its letter it is not within the spirit of its provision. Nor is there a reason why an opinion should not be delivered in the case of a divided Court. This involves an enquiry into the reason of judges delivering opinions at all in any case. This is given by the judges both in England and America in language of this character.

In England said Lord Kenyon it has long since been held to be the great duty of every Court of justice to administer justice as well as they can between the litigating parties—another and not less material duty is to satisfy those parties that the whole case has been examined and considered. 6 T. R. 408.

Next to doing right the great object in the administration of public justice should be to give public satisfaction. 3 Black., 391.

The expressed reason of a judgment is an important ingredient in it, the reason of a resolution is more to be considered than the resolution itself. Ram 21.

Next to doing justice said Chancellor Dessassure, in a sentiment quoted with approbation by the Supreme Court of South Carolina, the greatest consolation of judges, is so to administer that justice as to satisfy the parties that the merits of their causes have been fully brought, well considered and impartially decided. 1 Hill Ch. 453.

In a recent case decided in the Court of Exchequer one of the judges said although Ld. Lyndhurst has in a great degree antici-

pated the judgment which I intended to deliver, the parties to the cause are entitled to be satisfied by knowing the opinion of each judge and the grounds on which it is founded. Ram on Judgment, 20.

"It is not only a justice due to the public and the parties," said Lord Mansfield, "to weigh well the grounds and reasons of the judgment, but it is of great consequence to explain them with accuracy and precision in open Court, especially if the question be of a general tendency, that the law of the land may be certain and known."

It is this course of these Courts that has obtained for them the tribute of the most distinguished of the jurists of America. " Every person well acquainted with the contents of the English Reports must have been struck with the unbending integrity and lofty morals with which the Courts were inspired. I do not know where we could resort among all the volumes of human composition to find more constant, more tranquil and more sublime manifestations of the intrepidity of conscious rectitude. If we were to go back to the Iron times of the Tudors and follow judicial history down from the first page in Dyer, to the last page of the last reporter, we should find the higher Courts of civil judicature generally and with rare exceptions, presenting the image of the sanctity of a temple where truth and justice seem to be enthroned and personified in their decrees." 1 Kent. Com., 496.

Nor have the American Courts been wanting in this respect, having earned a like deserved distinction. Did those judges however content themselves with discussion and the delivering of opinions in cases only when they were all agreed ? By no means, their noblest triumphs were earned, their greatest efforts made in cases of disagreement, in cases of doubt where the highest stretch of ingenuity and talent were required to attain and develope the truth. It is there indeed discussion, debate and effort are required and wanted. "All opinions, yea errors known, read and collected," says an eminent writer, "are of main service and assistance towards the speedy attainment of what is truest. Truth arises from the collision, and from hence springs liberty which is a security from the effect of reasoning." We do not require a beacon when the channel is deep and free from impediment.

Supposing that we are mistaken in the opinion that the case was decided, that there was a Court to give judgment and that it is not open to future adjudication, we ask then if the parties even in a

Philip Fraser and Wife, *vs.* Charles Willey.

case so situated have not rights and the public to be satisfied how and why a judgment has been so rendered ?

If right in the opinion that the two judges constitute , the Court does not a singular responsibility devolve upon those thus assuming the high and solemn duties of this exalted tribunal to explain satis-factorily and conclusively a judgment which they assert in opposi-tion to the respectable authority of two of their brethren.   It does seem to us in proportion to the delicacy of that position is it a duty on their part clearly and beyond all question to vindicate and sustain the propriety of their judgment.

Clear in the opinion that the construction given is against the letter as well as the spirit of the law, there are other reasons no less cogent in my view against it founded in the very organization of the Court itself.  This is the highest judicial tribunal of the land, it is of the last resort except in very few instances, it undertakes to administer the law according to the course of the most enlightened Courts in this country and in England.   They all in their action for centuries past in England and since the time of their organization in this country as we have seen, have been distinguished for the discussion, the careful and attentive examination and consideration of questions and principles.   Their records are a proud monument in their favor of an adherence to truth and right and principle maintained over the occasional ascendancy of error and mistake. To their honor and glory be it spoken, there has been no ipse dixit of the judges, no mere mandate as the order or command from an executive officer ; such is not and it is to be hoped never may be the mode of action of the Courts in this country.   They have sus-tained themselves and can ever only sustain themselves by basing their decisions upon justice and right and explaining to the citizen the grounds and reasons of their decision.   The opinions of the Court are the only means of communicating with the people, their protection against perversion of facts and law—against misrepresen-tation, against error and mistake, they are important alike to the judges, to the parties and to the people and any omission, restriction or abridgement of the duty is calculated to be alike injurious to them all.